Tueley, J.
delivered the opinion of the court.
In the case of Bradley vs. The Commissioners of Powel county, heard and determined by this court, at Knoxville, in the year 1841, and reported in 2 Hum., 428, it was held, that commissioners, appointed to organize a county, under an act of the legislature establishing it, should be enjoined from the performance of that duty, where the county had been established by the legislature, in violation of the 4th sec. of 10th art. of the amended constitution of the state, which provides that “new counties may be established by the legislature, to consist of not less than three hundred and fifty square miles, and which shall contain a population of four hundred and fifty qualified voters; no line of which county shall approach the court-house of any old county, from which it may be taken, nearer than twelve miles.”
In that case it clearly appeared, that the area contained within the lines of the county, as defined by the act establishing it, was not equal to three hundred and fifty square *158 miles, and that one of the lines approached the court-house of Hawkins (from which a part of said county had been taken) nearer than twelve miles; wherefore, it was considered that the act had been passed in direct contravention of the specified clause of the constitution, which was construed to be a prohibition upon the legislature, in exercising the sovereign power of making counties or municipal corporations; for the proper protection and government of the citizens of the state, and therefore conferred no authority upon the commissioners appointed, to organize the county; and that a court of Chancery had the legitimate power to enjoin them from the exercise of the power thus illegally delegated to them. In the opinion then delivered by this court, it is said; “It is the inability of courts of law to operate prospectively by prohibition, for the prevention of mischief, that has established upon clear and definite grounds, that portion of Chancery jurisdiction which rests upon the doctrine of quia timet. It embraces a great variety of interests which we need not and do not design to investigate here. It suificeth for this case to say, that it always applies where great and irreparable mischief may be the consequence of illegal action, which the common law courts, from their mode of proceeding cannot stay — such we think this to be. If the establishment of the county be unauthorized, its organization ought to be prohibited, and this no court but one of Chancery can do.”
Upon a review of this case, we are satisfied of the correctness of its doctrine and re-affirm it. The act of the legislature having been passed in violation of the constitution, had no validity, and of course conferred no power upon the commissioners appointed by it, who were, therefore, proceeding in violation of law, to mark and *159 lay off a new county, and to organize a police government for it, by the election of a sheriff, justices of the peace, clerks of the courts, &c.; the consequence of all which would necessarily be, the production of confusion and uncertainty in the administration of justice and of inconvenience and mischief to the inhabitants not only of the proposed new county, but of those from which it was to be taken, by a necessary increase of taxation for public buildings and police expenditures. These evils the result of unauthorized and illegal action by these pretended commissioners, a court of Chancery has power to prohibit, upon the application of any person liable to be injured thereby.
But in the case now under consideration, we are asked to go a step further and abolish a county after it has been organized and put into operation, under an act of the legislature establishing it. This is presenting the question in a very different aspect indeed, and we know of no principle of Chancery jurisprudence, upon which the jurisdiction thus invoked can be exercised. The prohibition of an act, and the undoing of it after it has been performed are very different things, and the jurisdiction of a court of Chancery can be maintained in many instances for the one, while the person agrieved is left solely to his remedy at law for the other: and such, we think, most clearly to be the case now under consideration: as long as the organization of the county is in fieri, the court has power over the commissioners appointed by the invalid act establishing it, and may prohibit them from the exercise of the authority illegally imposed upon them by it; but the moment the power is executed, and the county organized in pursuance of the statute, that moment the connexion of the commissioners with the transaction ceases; they become, if the expression be legitimate, functi officio; *160 and the county becomes, under tbe statute, a political corporation of the State, and a court of Chancery has no power to enquire into the validity of the act, and, as we apprehend, a court of law neither. The power of courts to declare acts of legislation unconstitutional, only exists where they are called upon to enforce them, or declare under them some right effecting life, liberty, or property. The courts have no power to prohibit the legislature from the exercise of unconstitutional power in legislation; they can only refuse to carry into execution such unconstitutional legislation. There are many provisions of the constitution directory, mandatory, and prohibitory to the legislature, against the violation of which, there is and can be no legal protection: such are the clauses requiring the performance of duties imposed upon the legislature itself, and the restriction in the performance of those duties; in all these, and the like cases, the only security is to be found in the obligation of the members to support the constitution, and in the ballot-box. If the legislature, in violation of the provisions of the constitution, refuse to perform a duty imposed upon it — if it perform this duty, without regard to the non-existence of a given state of facts required; in all these cases there is no remedy. A court of justice cannot compel action, it cannot prohibit action, it cannot undo action. Such, in our opinion, is the case of a county established and organized by an act of legislature, in disregard of the provisions of the article of the constitution, which makes it the duty of the legislature not to establish a new county unless it contain within its limits a given number of square miles, and a. given number of voters. Every member is bound by his oath not to violate this clause of the constitution, but the courts have no power to prohibit such violation, nor to undo an *161 action which may be the result of it: and the only ground upon which the organization of a county, by commissioners, under a law so passed, may be prohibited, results from the fact, that they are individuals amenable to a court of Chancery, that the law communicates to them no power, and that they ■ are in consequence thereof, in the performance of an illegal act, calculated to produce mischief, if it be not restrained; but when it is once organized, though it be by commissioners, it is as if it had been organized by the legislature without a commissioner, and is beyond the control of the courts.
As to the question made upon the boundary lines of this county; it being alleged, that they are run within a distance of other county seats, prohibited by the constitution, or twelve miles; it is to be observed, that this prohibition is made in favor of the counties, and a violation of it, violates rights secured by the constitution to them, which cannot be permitted, as it would be an unconstitutional divestment of a vested right; the consequence of which is, the adjoining counties are not bound by the running of these lines/ if they trench upon the limits thus secured to them, that is, the twelve miles from the seat of justice; ■ but they may force these lilies back to the required distance if they see proper so to do..
Then upon the whole view of this case, .we reverse the decree of the Chancellor, and dismiss the complainant’s bill with costs.